IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

LARISSA K. SCHULTZ,

     Plaintiff,

vs.

NEBRASKA DEMOCRATIC PARTY,

     Defendant.

Case No.

**COMPLAINT AND JURY DEMAND**

COMES NOW the Plaintiff, by and through her attorneys, and for her causes of action against the Defendant hereby states the following:

**PARTIES-VENUE-JURISDICTION**

1.     Plaintiff Larissa K. Schultz, is a resident of Yutan, Saunders County, Nebraska.

2.     Defendant Nebraska Democratic Party is a Nebraska non-profit corporation authorized to conduct business in Nebraska with its principal office located in Lincoln, Lancaster County, Nebraska.

3.     At all relevant times, NDP employed Schultz and exercised control over her work, compensation, assignments, attendance at events and trainings, and other terms and conditions of her employment.

4.     At all relevant times, NDP was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

5.     On information and belief, NDP employed or jointly employed fifteen or more employees for each working day in twenty or more calendar weeks during the relevant current or preceding calendar year. Among other things, in November 2024 NDP's State Party Chair represented that NDP employed more than twenty-five staff members. During the fall of 2024, NDP's public staff webpage separately identified approximately fourteen NDP staff members and nineteen coordinated-campaign staff members. NDP employed 15 or more employees as a joint employer or as an integrated enterprise.

6.     NDP's relevant employment decisions were made and implemented in Lancaster County, Nebraska, and a substantial portion of the unlawful employment practices alleged herein

occurred in or were directed from Lancaster County.

7.    This Court has original jurisdiction over the claims arising under federal law.

8.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.

9.    Venue is appropriate in this District under 28 U.S.C. §1391(b) and (c).

10.    On or about December 27, 2024, Schultz filed her charge, 563-2025-01188, with the U.S. Equal Opportunity Commission ("EEOC") alleging sex discrimination and retaliation.

11.    On or about April 29, 2026, less than 90 days prior to the filing of this Complaint, the EEOC issued Plaintiff a Notice of Right to Sue on charge number 563-2025-01188.

## FACTUAL BACKGROUND

12.    Plaintiff Larissa K. Schultz (hereinafter referred to as "Schultz") commenced employment with Nebraska Democratic Party (hereinafter referred to as "NDP") on or about December 6, 2023.

13.    In 2023, NDP recruited Schultz to perform paid work for the Party in connection with its Young Democrats program. Schultz worked for NDP as its Young Democrats Organizer.

14.    On November 9, 2023, NDP's Director of Operations, Ron Rivera, congratulated Schultz on "joining the NDP team," scheduled her onboarding, and advised Schultz that she would be paid for participating in the onboarding process.

15.    NDP thereafter required Schultz to attend all-staff meetings, complete payroll and tax documentation, provide information for NDP business cards, and establish an NDP staff email address.

16.    NDP paid Schultz for her work and for attendance at required NDP meetings and trainings.

17.    NDP also directed Schultz to attend trainings expressly limited to paid state-party staff. In March 2024, Schultz attended a multi-day staff training in Kansas City that NDP and the Democratic National Committee represented was for paid state-party staff only. NDP paid Schultz for attending the training.

18.    In March 2024, NDP's State Party Chair, Jane Kleeb (hereinafter "Kleeb", described Schultz as a "key staff member."

19.    NDP publicly listed Schultz as a staff member on its website throughout much of 2024.

20.    In July 2024, NDP informed Schultz and other members of her team that they had

received a raise and continued requiring Schultz to perform work and attend events on NDP's behalf.

21. NDP continued assigning Schultz paid work through the November 2024 election. On November 4, 2024, NDP sent Schultz and other members of the "team" the following day's work schedule, and Schultz worked for NDP on November 5, 2024. Schultz's employment was related to, but distinct from, her leadership involvement with the Nebraska Young Democrats.

22. In January 2024, Schultz specifically asked NDP whether it intended to continue employing her after her term as Young Democrats President expired. NDP did not advise Schultz that her employment would end when that term expired.

23. Although a July 2024 Young Democrats work timeline addressed work through Election Day, NDP continued publicly identifying Schultz as NDP staff after the election and through at least December 2024.

24. Schultz had been slated to continue working as the Young Democrats Organizer and had also discussed transitioning into a Rural Community Organizer position.

## A. FLORES' SEXUAL HARASSMENT OF SCHULTZ

25. At all times relevant, Jose Flores, Jr. (hereinafter "Flores") served as NDP's Communications Director.

26. Flores held a director-level position within NDP, and Schultz was required to interact with him through her work for NDP, including at meetings, trainings, conventions, and other NDP-related events.

27. Beginning in approximately December 2023, Flores began directing unwanted personal and sexual attention toward Schultz.

28. Flores repeatedly sent Schultz inappropriate text messages concerning her appearance, including commenting on photographs of Schultz and calling her "cute" and a "fox."

29. Flores used terms of endearment such as "dear" and "mama," told Schultz how much he was looking forward to seeing her, and questioned whether Schultz's partner would be accompanying her on work trips.

30. The unwanted messages continued through August 2024.

31. On or about March 2, 2024, after a work-related event, Flores asked Schultz to come to his hotel room to drink with him. Schultz declined.

32. Flores persisted and again asked Schultz to join him in his hotel room. Schultz again

declined.

33.    During the March 25-27, 2024 NDP staff training in Kansas City, Flores attempted to hug Schultz. Schultz did not reciprocate.

34.    Flores nevertheless put his arm around Schultz's shoulders, pulled her toward him, and rubbed her arm.

35.    Later, Flores again placed his arm around Schultz and rubbed her arm as the group was leaving the training.

36.    During another group outing associated with the Kansas City training, Flores reached out and grabbed Schultz as she attempted to walk past him, pulled her toward him, kissed her on the cheek, and made an intimate comment in her ear. Schultz did not reciprocate or welcome Flores' touching or sexual attention.

37.    After returning from the Kansas City training, Schultz reported Flores' conduct to NDP's Political Director and explained that Flores' conduct made her uncomfortable.

38.    NDP's Political Director instructed Schultz to report the matter to NDP's Executive Director and State Party Chair.

39.    Flores' conduct nevertheless continued. On June 8, 2024, Schultz attended an event in Hastings in connection with NDP's state convention.

40.    When Schultz stated that the line to sing karaoke was too long, Flores told her that the DJs would probably permit her to cut the line "with that ass!" Flores then bent forward and craned his neck around Schultz's body to look at her buttocks.

41.    On August 22, 2024, Schultz and Flores attended the Democratic National Convention in Chicago in connection with their work and activities for NDP.

42.    During the convention, Schultz asked Flores to obtain water for a volunteer.

43.    Flores responded by angrily confronting and berating Schultz in front of others, repeatedly using profanity and chastising her for not first asking how he was doing.

44.    Flores initially walked away, then returned toward Schultz and continued the confrontation. Multiple individuals witnessed Flores' conduct towards Schultz.

45.    Shortly thereafter, Schultz advised Kleeb of the incident and told her that Schultz needed to speak with her further about what had been occurring with Flores.

46.    Later that evening, Flores approached Schultz's partner aggressively, attempted to hug him, and told him that there were "two sides to every story."

## B. SCHULTZ REPORTS THE SEXUAL HARASSMENT

47.    On August 26, 2024, Schultz contacted NDP's Executive Director, Precious McKesson, and requested a telephone conversation.

48.    When Schultz did not receive a response, she followed up and spoke with McKesson on August 30, 2024.

49.    Schultz expressly told McKesson that Flores was sexually harassing her and described the inappropriate conduct that had occurred.

50.    McKesson acknowledged that Schultz's allegations were serious and asked whether Schultz wanted to proceed with a complaint under NDP's Code of Conduct. Schultz unequivocally stated that she wanted to pursue a complaint. McKesson asked Schultz to put her complaint in writing and told Schultz that she would forward the complaint to Kleeb and begin the complaint process.

51.    Schultz sent McKesson a written complaint that same afternoon.

52.    NDP did not thereafter communicate with Schultz about any formal investigation or corrective action for more than two months.

## C. NDP'S RESPONSE AND RETALIATION

53.    After Schultz complained about Flores, her treatment within NDP changed.

54.    At an NDP gala in October 2024, Schultz's reserved seating was changed. Schultz was also omitted from a security communication necessary for her to participate in photographs with NDP's honored guests.

55.    During the same event, Flores positioned himself directly behind Schultz and repeatedly made clicking noises toward her when she stood to applaud speakers.

56.    On November 11, 2024, having received no meaningful communication from NDP about her complaint, Schultz contacted Kleeb and asked about the status of the complaint.

57.    Kleeb responded that she did not know Schultz had made a "formal" complaint, despite Schultz's August 30 conversation with McKesson and the written complaint that McKesson had specifically instructed Schultz to submit.

58.    Schultz informed Kleeb that she had intended to invoke NDP's formal complaint process and questioned why NDP had not communicated with her about the investigation.

59.    On or about November 25, 2024, Schultz spoke with Kleeb by telephone. Kleeb told Schultz that she had spoken with Flores and that Flores denied or minimized Schultz's

allegations. Kleeb also represented that NDP had spoken with other witnesses concerning Schultz's allegations. Kleeb told Schultz that NDP could not discipline Flores because he was represented by a union and that NDP could do little more than place a letter in Flores' file unless another woman complained, at which point NDP would take the matter to the union.

60.     Schultz objected that this was not an appropriate response to her complaint. Schultz expressly informed NDP that she believed she was experiencing retaliation. Schultz requested mediation and sexual-harassment training.

61.     Schultz subsequently learned that individuals whom NDP represented had been interviewed had not, in fact, been interviewed and that NDP had not conducted the formal investigation Schultz requested.

62.     NDP did not conduct a formal interview of Schultz through its Ad Hoc Ethics Committee until January 16, 2025—approximately five months after Schultz expressly reported the sexual harassment to Kleeb and McKesson.

63.     While the complaint process remained pending, Flores continued engaging in unwanted conduct toward Schultz.

64.     On March 29, 2025, Flores approached a group in which Schultz was standing at a Sarpy County Democrats fundraiser, looked directly at Schultz's chest, scoffed, and walked away.

65.     Schultz reported this conduct to NDP's Ethics Committee.

66.     On April 14, 2025, the Ad Hoc Ethics Committee issued a report recommending, among other things, sexual-harassment and DEI training for staff and substantial revisions to NDP's Code of Conduct complaint process. To the best of Schultz's knowledge, no other action was taken to remedy the past harassment and retaliation, or to prevent future harassment and retaliation.

### D.  NDP ENDS SCHULTZ'S EMPLOYMENT

67.     Schultz continued performing paid work for NDP after her August 30, 2024 sexual-harassment complaint, including through Election Day.

68.     NDP continued publicly identifying Schultz as a member of its staff through at least December 12, 2024.

69.     Schultz had been slated to continue in her Young Democrats Organizer position and had discussed transitioning to work for NDP as a Rural Community Organizer.

70.     After Schultz reported Flores's sexual harassment, repeatedly sought an

investigation, and complained that NDP was retaliating against her, NDP ceased employing Schultz.

71.   NDP did not continue Schultz in the Young Democrats Organizer position.

72.   NDP did not transition Schultz into the Rural Community Organizer position she had been slated for with NDP prior to her complaint.

73.   By January 24, 2025, NDP had removed Schultz from its public staff webpage.

74.   Whether characterized as a termination, failure to continue Schultz's employment, or refusal to place Schultz into continued employment with NDP, NDP subjected Schultz to an adverse employment action.

75.   NDP's adverse treatment of Schultz followed closely after her repeated complaints of sexual harassment and her demands that NDP meaningfully investigate and address Flores' conduct.

76.   NDP's Executive Director and State Party Chair personally knew of Schultz's complaints and participated in NDP's response to those complaints.

77.   NDP's senior leadership nevertheless failed to initiate a timely and effective investigation or take corrective measures reasonably calculated to prevent further harassment.

78.   NDP then ended or refused to continue Schultz's employment.

79.   NDP's actions were taken because Schultz opposed and reported sex-based harassment and sought corrective action from NDP.

80.   Prior to her employment ending, Plaintiff's job performance was satisfactory.

81.   Plaintiff was earning $20.00 per hour working full-time for Defendant. As of the date of this filing, Plaintiff's lost wages resulting from Defendant's wrongful conduct are in excess of $15,000 and continuing.

82.   As a result of Defendant's wrongful conduct, Plaintiff suffered lost wages, compensatory damages, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and has also incurred attorney's fees and other costs that are continuing.

## COUNT I
## SEX DISCRIMINATION-HOSTILE WORK ENVIRONMENT
### 42 U.S.C. § 2000e-2

83.   Plaintiff hereby incorporates paragraphs 1 through 82 as if fully set forth herein and states:

84.     Plaintiff was subject to unwanted sexual conduct including inappropriate touching of her body, inappropriate sexual advances and intimidation, assault, and inappropriate discussion of her body.

85.     This conduct was unwelcome.

86.     Such conduct was based on the Plaintiff's sex.

87.     Such conduct was sufficiently severe or pervasive that a reasonable person in the Plaintiff's position would find the plaintiff's work environment to be hostile.

88.     At the time such conduct occurred and as a result of such conduct, Plaintiff believed her work environment to be hostile; and,

89.     Defendant knew or should have known of the conduct towards Plaintiff.

90.     Defendant failed to take prompt and appropriate corrective action to end the harassment.

91.     The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendant are subject to punitive damages.

92.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment and attorney's fees.

## COUNT II

## RETALIATION

### 42 U.S.C. § 2000e-3(a)

93.     Plaintiff hereby incorporates paragraphs 1 through 92 as if fully set forth herein and states:

94.     During her employment. Plaintiff engaged in protected activity, including but not limited to exercising her rights under Title VII, by internally complaining of sexual harassment and retaliation to her supervisors and filing a charge of discrimination with the EEOC.

95.     Defendant took adverse employment action against Plaintiff, including but not limited to changing Plaintiff's work schedule, reducing Plaintiff's hours and pay, denying her promotions, failing to investigate her claims of sexual harassment, and terminating her employment.

96.     There is a causal connection between Plaintiff's participation in protected activity and Defendant's adverse action against her.

97.     As a result of Defendant's retaliation. Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and attorney's fees.

### DAMAGES

98.     Plaintiff hereby incorporates by reference paragraphs 1 through 97 and states:

99.     As a result of Defendant's discrimination and retaliation, Plaintiff has suffered damages and seeks the following relief:

    a.  Lost wages and benefits to the time of trial;

    b.  Front pay;

    c.  Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

    d.  Punitive damage;

    e.  Attorney's fees, expert witness fees and other reasonable costs; and,

    f.  Pre-judgment and post judgment interest.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for all her general, special, and punitive damages, for costs, attorney's fees, interest and for such other relief as just and equitable.

Plaintiff demands a trial by jury.

Dated: July 28, 2026.

LARISSA K. SCHULTZ, Plaintiff

BY:     s/ Jennifer Turco Meyer
         Jennifer Turco Meyer, #23760
         Turco Meyer Law, LLC
         4309 South 174th Avenue
         Omaha, Nebraska 68135
         (402) 577-0252-Office
         jennifer@turcomeyer.law
         Attorney for Plaintiff